OPINION OF THE COURT
Alice Schlesinger, J.
*759 Alexis Hernandez was incarcerated at Rikers Island from February 3, 2003 to October 23, 2003. During that time, he was also treated at Bellevue Hospital, beginning on August 22, 2003. He has filed a timely notice of claim and a complaint against both parent entities, New York City Health and Hospitals Corporation and the New York City Department of Correction, alleging medical malpractice against both. Included in his complaint is also a claim of lack of informed consent (third cause of action) and negligent hiring and supervision of medical personnel (fourth cause of action).
Specifically, Mr. Hernandez alleges that he was a diabetic at the time of his incarceration, that he informed the prison and hospital personnel of this condition, and that the care and medication he received for his diabetes was so substandard, unskillful, careless and negligent that he became blind in his left eye.
He has now moved to amend his notice of claim and complaint, pursuant to CPLR 3025 (b), to add a civil rights claim pursuant to 42 USC § 1983. His counsel points out that no new facts are being asserted. In fact, in his verified bill of particulars dated October 19, 2004, notice of this alleged federal statutory violation was given. Also, there was an extensive hearing held on March 18, 2004 pursuant to section 50-h of the General Municipal Law, wherein Mr. Hernandez was questioned in detail about his claims.*
The facts in more detail, as recited by plaintiff, consist of the following. Hernandez was diagnosed with Type I diabetes in 1991. Since then he has taken a twice daily dose of 45 units of 70/30 insulin. While on Rikers Island, he was instead administered 28 units of NPH insulin. Plaintiff states that he regularly informed the nurses administering the insulin and the doctors in the infirmary that this was the wrong dosage. He adds that he was told in response that, since he was in jail, he had to take what he was given.
In the middle of August 2003, Hernandez says he started experiencing severe headaches and blurred vision. He went to the infirmary several times six days in a row to complain and get help. He was given Tylenol in response and was told there was nothing to worry about. On day seven he woke up blind in *760 his left eye. He was then taken to Bellevue where he was diagnosed with bleeding from his eye and a detached retina. He had surgery on October 14. However, this was unsuccessful and his vision was never restored. Hernandez claims he is now permanently blind in that eye.
Counsel argues that a section 1983 violation is appropriate under these circumstances since Mr. Hernandez, while incarcerated, was completely dependent on the State for medical care. He urges that the alleged facts here substantiate his claim that, by denying him proper dosages of insulin and basic medical care, the State violated his civil rights.
The defendants oppose the motion. Their counsel, who attaches as part of their opposition a copy of Hernandez’s medical records while he was in custody, argues that factually and legally the proposed amendment is insufficient and/or lacking in merit. He points to the “sheer poundage” of the records as illustrative of the alleged extensive, continuing care Mr. Hernandez received. Specifically, it is argued the plaintiff never even mentioned his diabetic condition until April 8, two months after his incarceration began, and denied being afflicted with this serious illness up to that point. Also, counsel attaches a number of “patient refused treatment forms,” many of which allegedly reflect Hernandez’s aversion to going to the optometry clinic.
Further, defendant urges that, at best, Mr. Hernandez alleges malpractice which is not enough to implicate the State in a claim that his rights were violated. The standard is a much higher one of “deliberate indifference” to the medical needs of the prisoner.
Counsel is correct in stating the standard, but he is wrong in how he applies it to the circumstances here. This is particularly so because amendments to pleadings should be granted when there is a colorable claim when viewed from the plaintiff’s perspective. (See Haines v Kerner, 404 US 519 [1972] [wherein the United States Supreme Court, in considering whether to allow an Illinois state prisoner to maintain a section 1983 civil rights suit against prison officials based on his claim that the state aggravated a preexisting foot injury by forcing him to sleep on the floor of his cell with only blankets, found, in reversing the lower court’s dismissal, that Haines should be able to offer supporting evidence for his claim].)
Also significant is Estelle v Gamble (429 US 97 [1976]). There, while finding that petitioner Gamble, an inmate of the Texas Department of Corrections, did not state a sufficient claim, the *761 Supreme Court did discuss and articulate the rationale and rule for allowing prison inmates to claim violations of constitutional Eighth Amendment violations and statutory violations pursuant to 42 USC § 1983. In doing so, the Court first reviewed its opinions involving punishments to prisoners that had been held repugnant as cruel and unusual and incompatible with the “evolving standards of decency that mark the progress of a maturing society.” (Estelle, 429 US at 102 [citing numerous cases].) The Court then went on to state:
“These elementary principles establish the government’s obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. [When that happens, serious results may ensue, including] pain and suffering which no one suggests would serve any penological purpose.” (429 US at 103.)
Yet the standard for such a claim is a high one. It is one of deliberate indifference to serious medical needs, regardless of how it is evidenced. Certainly that does not mean that every claim by a prisoner that he has received inadequate medical treatment states a valid constitutional or statutory claim. “Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.” (429 US at 105.)
In fact, Mr. Gamble’s claims against his prison physician were found not cognizable under section 1983. The Court reached this conclusion because Gamble had been seen on a large number of occasions, given an appropriate diagnosis, as well as appropriate treatment in the form of bed rest, muscle relaxants and pain relievers for his lower back injury. The fact that more could have been done or different treatments prescribed was a matter of medical judgment, not anything more.
Certainly there are instances when prisoner plaintiffs have been allowed to assert section 1983 claims. (See, e.g., Archer v Dutcher, 733 F2d 14 [2d Cir 1984]; Hathaway v Coughlin, 841 F2d 48 [2d Cir 1988]; Hemmings v Gorczyk, 134 F3d 104 [2d Cir 1998].) In Archer, the plaintiff asserted that because of the institution’s refusal to take her to the hospital because of vaginal bleeding she was made to suffer a spontaneous abortion. She alleged that she had brought her pregnancy-related problems to prison personnel and that these had essentially been ignored. In Hathaway, the inmate alleged he had been *762 deprived of treatment for a hip condition for over a year before he finally underwent corrective surgery. In Hemmings, the plaintiff complained that a rupture of his achilles tendon was ignored, misdiagnosed and mistreated. In all of these cases, the Court found the standard of deliberate indifference had been successfully asserted.
In applying these principles here, the allegations by Mr. Hernandez of “wanton and reckless” treatment do rise to the level of deliberate indifference, at least by his assertion. Quite simply, the plaintiff states that he was purposely deprived of his appropriate medication in the appropriate dosage for his diabetes, despite his having made countless requests. Instead, he was told: “I had to take whatever they give me because that’s jail.” (Transcript of 50-h hearing, at 83, lines 11-12.) Further, when Mr. Hernandez began to experience serious symptoms, vis-a-vis his left eye in August of 2003, he purportedly told medical personnel, explaining that he “couldn’t see down the hallway” and his vision was “getting blurry” (at 91, lines 12-15), but nothing was done and he was told nothing could be done.
Referring to the chief of doctors at the institution, Mr. Hernandez gave the following testimony (at 94-95, line 3ff):
“A. No, I went over there. I told him like every day it is getting worse and worse. I need to go to the hospital. Send me out to the hospital, he said he can’t do that. I can’t do nothing for you. I can’t.
“Q. So how long did that go on?
“A. That went on for six days.
“Q. In those six days you saw the doctor, how many times?
“A. Every day.
“Q. So about six times?
“A. What?
“Q. You saw the doctor about six times during that first week?
“A. I saw the doctor every day like two times, three times a day. I kept going back.
“Q. You saw the doctor about 15 times?
“A. Fifteen, eighteen times.
“Q. They kept telling you the same thing?
“A. Same thing. In a matter of six days.
“Q. So what happened on the seventh day?
“A. I was blind.”
*763 Apparently, when that happened and another inmate had to walk Mr. Hernandez to the infirmary because he could not see, then the prison decided to send him to the hospital.
The above allegations do not simply refer to claims of negligent medical care and treatment. If proven, a factfinder could decide that the facts constitute deliberate indifference to the health of Hernandez, failure to give him proper medication for a serious illness, and failure to respond promptly and properly when told of the serious symptoms he was experiencing. Therefore, I find that under the circumstances the added cause of action has arguable merit, both factually and legally.
Accordingly, it is hereby ordered that the plaintiffs motion for leave to amend the complaint herein is granted, and the amended complaint in the proposed form annexed to the moving papers shall be deemed served upon service of a copy of this order with notice of entry thereof; and it is further ordered that the defendant shall serve an answer to the amended complaint by May 13, 2005.

 In this regard, at oral argument, I asked for a copy of this transcript because defense counsel had complained that the moving papers had contained no sworn statement from the plaintiff. I have now received and read this transcript.